Paper No. 13
JER

THIS DISPOSITION IS CITABLE
AS PRECEDENT OF THE TTAB          DEC. 9, 98

U.S. DEPARTMENT OF COMMERCE
PATENT AND TRADEMARK OFFICE
_____

Trademark Trial and Appeal Board
_____

In re Patent & Trademark Services, Inc.
_____

Serial No. 75/009,424
_____

Joseph H. McGlynn of Patent & Trademark Services, Inc. for applicant.

Daniel P. Vavonese, Trademark Examining Attorney, Law Office 109 (Deborah Cohn, Managing Attorney).
_____

Before Rice, Seeherman, and Walters, Administrative Trademark Judges.

Opinion by Rice, Administrative Trademark Judge:

An application has been filed by Patent & Trademark Services, Inc. to register, upon the Principal Register, the mark PATENT & TRADEMARK SERVICES, INC. for services identified as "legal representation in the area of Intellectual Property administered by representing others

before the Patent and Trademark Office and the Copyright Office."[1]

Registration has been finally refused under Section 2(e)(1) of the Trademark Act of 1946, 15 U.S.C. §1052(e)(1), on the ground that applicant's mark, when used in connection with the specified services, is merely descriptive of them. Applicant has appealed. Both applicant and the Examining Attorney have briefed the issue before us. An oral hearing was not requested.

It is the position of the Examining Attorney that based on applicant's identification of services, it is clear that applicant's services will include representation with respect to all types of intellectual property, including patents and trademarks, and that PATENT & TRADEMARK SERVICES, INC. is therefore merely descriptive of a feature and purpose of the identified services, in that applicant provides patent and trademark services by representing others on patent and trademark issues before the U.S. Patent and Trademark Office ("PTO"). In support

---

[1] Application Serial No. 75/009,424, filed October 24, 1995, asserting May 1995 as applicant's date of first use and first use in commerce. The specimens submitted with the application are business cards bearing at their top, in dark letters, the designation PATENT & TRADEMARK SERVICES, INC., and then, several lines thereunder and in lighter letters, the name "Joseph H. McGlynn," the designation "Registered Patent Agent," an address, a telephone number, and a fax number.

of the refusal to register, the Examining Attorney has made of record printouts of portions of articles from the NEXIS computerized data base of publication and newswire information, and has asked that we take judicial notice of a dictionary definition.

As to the Examining Attorney's request that we take judicial notice of a dictionary definition, namely, a definition of the phrase "intellectual property," it is well settled that dictionary listings comprise matter of which we can take judicial notice. *See In re John Harvey & Sons Ltd.,* 32 USPQ2d 1451 (TTAB 1994), and *In re Analog Devices, Inc.,* 6 USPQ2d 1808 (TTAB 1988), *affirmed in opinion not for publication*, 10 USPQ2d 1879 (Fed. Cir. 1989). Accordingly, the Examining Attorney's request is granted, and we take judicial notice of the fact that the phrase "intellectual property" is defined in the *Random House Compact Unabridged Dictionary* (Special Second Edition 1996) as "*Law*. Property that results from original creative thought, as patents, copyright material, and trademarks."

The NEXIS printouts show the use of the designations "patent and trademark services" and "patent services" in the following contexts (**emphasis** added):[2]

---

[2] Some of the story excerpts included by the Examining Attorney appear to be from foreign publications or wire services. We have

"…offering the intellectual property community in Washington, DC, and Northern Virginia a genuinely new and exciting way of accessing **patent and trademark services**. The Patent Store's services will include U.S. and International patent document delivery, confidential expert search consultancy,…"—from a story headlined "Rapid Patent opens the Patent Store; Crystal City, VA, documentation and information outlet" appearing in the February, 1995 *Information Today*

"…negotiated between the two, including factors such as productivity of the Organization, cycle times, efficiency, cost reduction, and innovative ways of delivering **patent and trademark services**. The Secretary would be able to reward efficient, effective performance with a bonus… This workplace flexibility is necessary if the Organization is to hire needed employees quickly as the need for **patent and trademark services** increases."—from an item headlined "TESTIMONY September 14, 1995 BRUCE A. LEHMAN ASSISTANT SECRETARY OF COMMERCE HOUSE JUDICIARY COURTS AND INTELLECTUAL PROPERTY COMMERCE DEPARTMENT DISMANTLING AND PATENT BILLS" appearing in the September 14, 1995 *Federal Document Clearing House Congressional Testimony*

"… inventors get patents for their products. Currently, a bill is moving through the House that would help to protect inventors from worthless **patent services**. `These are very

---

given these stories little consideration. In the absence of evidence of the extent of circulation, if any, of the foreign publications in the United States, they cannot serve to show the significance in this country of the designation at issue. *See In re BDH Two Inc.,* 26 USPQ2d 1556 (TTAB 1993), and *In re Men's International Professional Tennis Council,* 1 USPQ2d 1917 (TTAB 1986). Wire service stories are competent to show how their authors used particular terms, but they are of limited probative value since they are circulated primarily to newspapers and news journals and, consequently, are not assumed to have influenced the attitudes of prospective customers among the general public. *See In re Men's International Professional Tennis Council, supra*, and *In re Manco Inc.,* 24 USPQ2d 1938 (TTAB 1992).

Ser. No. 75/009,424

serious frauds where people with very high
hopes can pay thousands and thousands of
dollars and get nothing in return,' said…"—
from an article headlined "Getting Stuck Over
a Stick; FTC Says Inventor Paid Thousands for
`Worthless' **Patent Services**" appearing in the
July 24, 1996 *The Washington Post*

"The last time we needed a copy of a patent
in a hurry, we paid a **patent service** firm
some $300 to have the claims and drawings
faxed to us; the client was delighted and
thought it was well worth the price."—from
an article headlined "Web of the Week"
appearing in the July 19, 1996 *Law Office
Technology Review*

"Inventors who once had to travel to Washington
for **patent services** can skip the trip.  The
Great Lakes Patent and Trademark Center, which
opens Monday in the Detroit Public Library's
main…"—from an article headlined "Center brings
help to door of inventors" appearing in the
November 10, 1995 *The Detroit News*

"… on the Internet, successfully lobbied Vice
President Gore's staff to direct the PTO, via
the OMB, to continue the Internet **patent service**
using PTO funds. … Commercial **patent services**:
Stay competitive.  Re-engineer your operations
when necessary to keep your costs under control."
--from an article headlined "More patents – lots
more – on the Internet" appearing in the
November, 1995 *Searcher*

A mark is merely descriptive if, as used in connection

with the goods or services in question, it immediately

conveys information about an ingredient, quality,

characteristic, feature, etc. thereof, or if it directly

conveys information regarding the nature, function,

purpose, or use of the goods or services.  *See In re Abcor*

5

*Development Corp.,* 588 F.2d 811, 200 USPQ 215 (CCPA 1978);

*In re Eden Foods Inc.,* 24 USPQ2d 1757 (TTAB 1992); and *In re American Screen Process Equipment Co.,* 175 USPQ 561 (TTAB 1972).  A mark does not have to describe every quality, feature, purpose, function, etc. of the goods or services in order to be found merely descriptive; it is sufficient for the purpose if the mark describes a single significant quality, feature, function, etc*.  See In re Venture Lending Associates,* 226 USPQ 285 (TTAB 1985). Further, the question of whether a mark is merely descriptive must be determined not in the abstract, that is, not by asking whether one can guess, from the mark itself, considered in a vacuum, what the goods or services are, but rather in relation to the goods or services for which registration is sought, that is, by asking whether, when the mark is seen on the goods or services, it immediately conveys information about their nature*.  See In re Abcor Development Corp., supra,* and *In re American Greetings Corp*., 226 USPQ 365 (TTAB 1985).

In the present case, it is clear that the phrase PATENT & TRADEMARK SERVICES, INC. immediately conveys information concerning characteristics or features of applicant's legal representation services, namely, that the

services are rendered with respect to patents and trademarks, and that they are rendered by a corporation.

Applicant contends that its mark does not immediately tell potential customers what applicant's services are; that copyrights, for example, are not mentioned in the mark, but one of applicant's services is procuring copyrights. However, a mark need not describe all of the goods or services for which registration is sought; registration must be refused if (as is the case here) the mark is merely descriptive of any of the goods or services for which registration is sought. *See In re Quik-Print Copy Shop, Inc.,* 616 F.2d 523, 205 USPQ 505 (CCPA 1980).

Applicant also contends that PATENT & TRADEMARK SERVICES, INC. is so broad that it would not convey to anyone seeing it the thought of applicant's services; that in the patent, trademark, and copyright field there are a plethora of services that may be performed; that in the patent area "services" might include pre-examination searches of the prior art, drafting a patent application, preparing formal patent drawings, infringement searches, validity searches, prosecution of the application in the U.S. Patent and Trademark Office, appeals to the Board of Patent Appeals and Interferences, prosecution of interferences, etc.; that not all companies engaged in the

7

area of procuring protection for intellectual property by representing others before the PTO perform all of these services; that applicant's mark gives no specific description of the types of services that applicant performs; and that therefore the mark cannot be said to be merely descriptive.

However, as stated in *In re Entenmann's Inc.*, 15 USPQ2d 1750, 1751 (TTAB 1990), *aff'd in opinion not for publication,* Appeal No. 90-1495 (Fed. Cir. February 13, 1991), "[w]hile it is true that in order to be held merely descriptive, a term must describe with some particularity a quality or ingredient of the product in question, it need not describe it exactly." *Cf. In re Analog Devices Inc.,* 6 USPQ2d 1808, 1810 (TTAB 1988), *aff'd in opinion not for publication,* 10 USPQ2d 1879 (Fed. Cir. 1989) (unpublished) ("However, while we readily concede that the category of products which the term `analog devices' names encompasses a wide range of products in a variety of fields, we do not believe this fact enables such a term to be exclusively appropriated by an entity for products, some of which fall within that category of goods."). Here, PATENT & TRADEMARK SERVICES, INC. describes significant aspects of applicant's services, and the fact that the phrase does not specify exactly which patent and trademark services applicant

offers does not mean that applicant is entitled to exclusively appropriate the phrase. Apropos thereto, applicant's contention that the term "services" in the phrase PATENT & TRADEMARK SERVICES, INC. is so broad that the phrase cannot be held merely descriptive is unpersuasive because the term "services" in the phrase does not stand alone but rather is modified and defined by the words "patent & trademark."

Applicant also argues that PATENT & TRADEMARK SERVICES, INC. is not merely descriptive because the inclusion of the term "Inc." indicates that the mark is referring to a corporation that is the source of the services, and not merely to a service provided by that corporation. We agree with the Examining Attorney, however, that the term "Inc." in applicant's mark does not serve to identify the source of applicant's services but rather merely indicates the type of entity which performs the services, and thus has no service mark significance. *See In re Industrial Relations Counselors, Inc.,* 224 USPQ 309 (TTAB 1984) [INDUSTRIAL RELATIONS COUNSELORS, INC. incapable of functioning as a mark for conducting seminars and research in the field of industrial relations; Board attaches no trademark significance to the corporate identifier "Inc."]; *In re E. I. Kane, Inc.,* 221 USPQ 1203

9

(TTAB 1984) [OFFICE MOVERS, INC. incapable of functioning as a mark for moving services; addition of the term "Inc." does not add any trademark significance to matter sought to be registered]; and *In re Packaging Specialists, Inc.,* 221 USPQ 917 (TTAB 1984) [PACKAGING SPECIALISTS, INC. merely descriptive of contract packaging services, etc.; the term "Inc." is recognized, in trademark evaluation, as having no source indicating or distinguishing capacity].

For the foregoing reasons, we conclude that the phrase PATENT & TRADEMARK SERVICES, INC., when used in connection with the services specified in applicant's application, is merely descriptive of them within the meaning of Section 2(e)(1) of the Act.

Decision:  The refusal to register is affirmed.

J. E. Rice

E. J Seeherman

C. E. Walters
Administrative Trademark
Judges, Trademark Trial
And Appeal Board